<u>***NOT FOR PUBLICATION***</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
DUTTON ROAD ASSOCIATES LP,    :
                                              :   Civil Action No.: 10-5478 (FLW)
             Plaintiff,                    :
                                              :   **OPINION**
      v.                                   :
                                              :
SUNRAY SOLAR, INC.,              :
                                              :
             Defendant.               :
_____ :

**WOLFSON**, **United States District Judge:**

Presently before the Court is Defendant's Motion to Dismiss Counts III, V, and VI of Plaintiff's Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's motion with respect to Plaintiff's negligence claim (Count V), but denies the motion with respect to Counts III and VI of Plaintiff's Complaint.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Dutton Road Associates, LP ("Dutton"), a Pennsylvania limited partnership, alleges that Defendant Sunray Solar, Inc. ("Sunray"), a New Jersey corporation, breached the parties' agreement by failing to install a solar panel system on the roof of Plaintiff's property in Philadelphia. Compl., ¶ 1-2, 4. Dutton, specifically, alleges that Dutton entered into a contract with Sunray for installation of the solar panel system on or about August 4, 2009. <u>Id.</u> at ¶ 5. The total amount due

1

under the contract was $475,672.00. Id. at ¶ 6. Pursuant to the agreement, Plaintiff alleges, Sunray was responsible for obtaining all government approvals, permits, incentives, grants, and rebates in connection with the solar panel installation. Id. at ¶ 8. After the initial agreement was finalized, the parties entered into an amended contract (hereinafter referred to as "Amended Agreement"). Id. at ¶ 10. According to Plaintiff, the Amended Agreement added that Sunray "guarantees, warrants, and represents" that Dutton is eligible for governmental rebate programs amounting to 30% of the cost of the solar panel system. Id. at ¶ 11. Dutton made two payments to Sunray, each in the amount of $142,701.60, on or about March 23, 2010 and April 6, 2010.

Dutton alleges that it subsequently discovered that Sunray was not authorized to conduct business in the City of Philadelphia ("City") or the Commonwealth of Pennsylvania; it was not aware of this fact at the time it executed the initial contract. Id. at ¶ 12. Because Sunray was not licensed to do business, Dutton alleges, Sunray was not able to begin work on the project. Id. at ¶ 16. Dutton avers that it sought an update on the status of the project on repeated occasions, id. at ¶ 17, to no avail. Id. at ¶¶ 18-19. According to Dutton, Sunray directed it to obtain copies of the permits and other governmental approvals from the City but, upon contacting the City, no applications or approvals were found. Id. at ¶ 22. Finally, Dutton alleges, "the solar panel system has not been installed on the roof of the [p]roperty in a workmanlike manner or at all." Id. at ¶ 23.

Dutton brings several causes of action against Sunray: a breach of contract claim (Count I), breach of implied covenant of good faith and fair dealing (Count II), unjust enrichment/quantum meruit (Count III), fraudulent concealment/intentional non-disclosure (Count IV), negligence (Count V), and rescission (Count VI). Dutton originally filed its complaint asserting these claims in the Court of Common Pleas, Philadelphia County, on August 23, 2010. Shortly thereafter, on September

21, 2010, Sunray removed the case to the Eastern District of Pennsylvania on the basis of diversity jurisdiction. Sunray subsequent filed a motion to transfer the suit to this district and, by stipulation of the parties and order of that court, the suit was transferred to this Court on October 21, 2010. After the case was transferred, Sunray filed the instant motion to dismiss upon which the Court now rules.

II.    DISCUSSION

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), I must view all allegations in the complaint in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). To satisfy the Rule 12(b)(6) standard, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To avoid dismissal, [the] complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff." See Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). Conclusory allegations of liability will not suffice. Id. at 1950.

The parties' agreement provides that New Jersey law applies, see Handwerker Cert., Exh. B at 2, and thus the Court will analyze the state law claims under the rubric of New Jersey law. Indeed, in deciding a motion to dismiss, a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004). I now turn to Defendant's arguments as to several of Plaintiff's claims.

   A.    *Availability of Rescission Remedy*

Defendant Sunray argues that Plaintiff may not seek rescission of the parties' contract for two reasons. First, Sunray argues that Dutton is not entitled to the equitable remedy of rescission because

3

it has alleged a claim of legal, as opposed to equitable, fraud. Second, Sunray argues that Dutton may not rescind the parties' agreement because "it has only recently insisted on performance." Pl. Open. Br. at ii. The Court rejects both of Sunray's arguments.

In support of its argument that the pleading of legal fraud precludes Dutton from seeking rescission, Sunray cites primarily to Enright v. Lubow, 202 N.J.Super. 58 (App. Div. 1985) and Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619 (1981). As these cases and more recent case law in New Jersey make clear, the key distinction between legal and equitable fraud is that legal fraud requires proof of intent while equitable fraud does not. Jewish Ctr., 86 N.J. at 624-25; Liebling v. Garden State Indem., 337 N.J.Super. 447, 453 (2001). Further, a plaintiff that asserts equitable fraud is not entitled to recover monetary damages; he or she may recover only in equity. See Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) ("Because defendants are not seeking damages, they need establish only equitable fraud, not legal fraud."). Defendant appears to argue that, in light of this distinction, the assertion of legal fraud precludes a plaintiff from seeking the equitable relief of rescission.

While Enright and Jewish Ctr. stand for the proposition that only equitable relief may be obtained in an action for equitable fraud, they do not stand for the inverse proposition that, in an action for legal fraud, only monetary damages may be obtained.[1] More to the point, as explained by the New Jersey Supreme Court in Jewish Ctr., "whatever would be fraudulent at law will be so in equity." 86 N.J. at 625. In other words, by pleading allegations of legal fraud, Plaintiff has

---

[1] Other cases cited by Defendant, Foont-Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J.Super. 254, 257 (App. Div. 1973) and Gherardi v. Board of Ed. of City of Trenton, 53 N.J.Super. 349, 366 (App. Div. 1959), likewise hold that a party alleging equitable fraud may only obtain equitable relief. They do not address what relief a party alleging legal fraud may obtain.

4

necessarily pled equitable fraud. Furthermore, although this Court's research has not revealed binding New Jersey case law expressly addressing whether allegations of legal fraud may entitle a plaintiff to rescission, the Court finds that Defendant has not met *its* burden of pointing to case law, in support of *its* motion to dismiss, that New Jersey law bars a plaintiff asserting legal fraud from seeking the remedy of rescission.[2] Thus Defendant's motion cannot succeed. The Court find this result particularly appropriate in light of the procedural posture of the instant suit; it may be that Plaintiff may not ultimately prove the *scienter* necessary for its legal fraud claim. In such an instance, Plaintiff could be entitled to demonstrate equitable fraud instead. See Jewish Ctr., 86 N.J. at 625 (describing equitable fraud as "the lesser burden" in comparison to legal fraud).

With respect to Defendant's second argument, that Dutton may not rescind the parties' agreement because it has only recently insisted on performance, Defendant fails to cite any New Jersey case law in support of its argument.[3] Rather, Defendant cites two federal decisions, both of

---

[2] Plaintiff cites to several cases in support of its contention that "[i]t is black letter law that, in New Jersey, a contract can be rescinded either on the basis of legal fraud or equitable fraud." Pl. Opp. at 7. However, Liebling v. Garden State Indem., 337 N.J.Super. 447 (2001) does not expressly make such a conclusion. And, although TIG Ins. Co. v. Privilege Care Marketing, Inc., Civil No. 03-3747 (JBS), 2005 WL 994581 (D.N.J. Apr. 27, 2005), states that an insurance policy "can be rescinded under either a legal, or equitable fraud theory," id. at *8, the New Jersey case upon which TIG relies was an equitable fraud case and, also, made no such express statement of law. Id. (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599 (1989)). Plaintiff has not pointed to any language in Bonnco or another binding New Jersey state decision that supports Plaintiff's "black letter law" contention. The Court acknowledges, however, that at least one nonprecedential Appellate Division decision states that an "injured party may seek rescission . . . based upon either legal or equitable fraud." Lucas Development, LLC v. Lucas Bros., Inc., Docket No. C-350-06, 2008 WL 2330196, * 5 (App. Div. 2008). Further, one New Jersey Supreme Court case, rendered in the insurance policy context, states "equitable fraud, *like legal fraud*, is available to rescind a life insurance policy even after the death of the insured ...." Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 111 (1991) (emphasis added).

[3] Defendant submitted to the Court copies of correspondence between the parties relating to Dutton's attempts to enforce the agreement. The Court need not consider the

which apply Pennsylvania law.  See Pl. Open. Br. at 8; Pl. Reply at 3 (citing Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Investments, 951 F.2d 1399 (3d Cir. 1991) and Levin v. Garfinkle, 492 F.Supp. 781 (D.C.Pa. 1980) aff'd 667 F.2d 381 (3d Cir. 1981)).  Because New Jersey law applies, and Defendant has failed to point to any such law in support of its argument, its attempt to preclude Plaintiff from seeking equitable relief on this basis is denied.

  B.  *Economic Loss Doctrine*

Defendant Sunray argues that Plaintiff's negligence claim is barred by New Jersey's economic loss doctrine.  Sunray is correct that, under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract.  "The economic loss rule 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.' " Dean v. Barrett Homes, Inc., 406 N.J.Super. 453, 470, 968 A.2d 192 (App. Div. 2009) (quoting R. Joseph Barton, Note, Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims, 41 Wm. & Mary L.Rev. 1789 (2000)), *reversed on other grounds* 200 N.J. 207 (2009).

Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract.  Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").  Plaintiff's key negligence allegation is that Sunray "had a duty to obtain . . . governmental

---

correspondence in ruling upon this aspect of Defendant's motion to dismiss because Defendant's argument fails as a matter of law.  Consequently, the Court declines to convert this motion into one for summary judgment as would be required if the Court considered such evidence.

6

approvals as well as governmental incentives, grants and rebates as part of the Project within a reasonable period of time." Compl., ¶ 48. This duty arises solely from the contract and, therefore, falls within New Jersey's economic loss doctrine. Indeed, Plaintiff makes the same allegation in its breach of contract claim. See id. at ¶ 26 ("In material breach of the Contract, the defendant has failed . . . to obtain governmental approval within a reasonable period of time [and] to obtain the governmental incentives, grants and rebates as part of the agreed upon installation.").

Plaintiff seeks to avoid application of the economic loss doctrine by arguing that the doctrine does not apply to contracts for the provision of services, as opposed to contracts for the sale of goods. This argument lacks merit. In New Jersey's seminal economic loss doctrine case, Saltiel, the New Jersey Supreme Court held that the doctrine applied to an agreement for services, specifically, an agreement that called for an architect and a turfgrass consulting firm to design and prepare specifications for a turfgrass reconstruction project.[4]  170 N.J. at 299.

Plaintiff, further, argues that the economic loss doctrine does not apply to misrepresentations that precede commencement of the contract. While this may generally be true, see Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557 (D.N.J. 2002) (reasoning that economic loss doctrine does not bar certain fraud in the inducement claims) (discussing, inter alia, Alloway v. General Marine Industries, L.P., 149 N.J. 620 (1997)), only those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of

---

[4] One of cases cited elsewhere in Plaintiff's opposition papers, also makes this point, noting that "[c]ontrary to plaintiff's contention, the economic loss doctrine has been applied not only in products liability cases, but also in actions arising out of contracts for services and mixed goods/services contracts, including construction contracts...." CapitalPlus Equity, LLC v. Prismatic Dev. Corp., 2008 U.S. Dist. LEXIS 54054, * 16-17 (D.N.J. July 16, 2008).

contract claim.  See Bracco, 226 F.Supp.2d at 563; see generally Chen v. HD Dimension, Corp., Civil No. 10-863, 2010 WL 4721514, *8-9 (D.N.J. Nov. 15, 2010) (discussing fraud in the inducement claims under the economic loss doctrine).  More to the point, Dutton's negligence claim is *not* that Sunray negligently misrepresented that it was licensed to do business in the City and the State of Pennsylvania.  Rather, the negligence count alleges that Sunray had a duty to obtain the requisite government approvals and incentives and that Sunray "breached [that duty] when it failed to do so." Compl., ¶¶ 48-49.  Thus, contrary to Plaintiff's characterization of the negligence claim in its briefing, that claim does not allege a pre-contractual misrepresentation; it alleges the breach of a duty that arises solely from the parties' agreement for solar panel installation.[5]  Accordingly, because the Court concludes that Plaintiff alleges a duty to disclose that arises from the parties' contract, New Jersey's economic loss doctrine bars Plaintiff's negligence claim.

Plaintiff requests that the Court permit it to amend its negligence claim, arguing that it is entitled to a curative amendment under the Third Circuit's decision in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).  In that case, the Third Circuit directs district judges to "permit a curative amendment, unless an amendment would be inequitable or futile." Id. at 236.  Here, affording Plaintiff an opportunity to amend would be futile because he cannot point to any

---

[5] This is what distinguishes Plaintiff's allegations from those in CapitalPlus Equity, 2008 U.S. Dist. LEXIS 54054 (D.N.J. Jul. 16, 2008), where the plaintiff in that case asserted a negligent misrepresentation claim that "d[id] not arise out of the same facts underlying the breach of contract claims." Id. at *17.  The same is true for Metex Mfg. Corp. v. Manson, 2008 U.S. Dist. LEXIS 25107 (D.N.J. Mar. 28, 2008), where there was "a genuine dispute whether Defendants *misrepresented* its . . . capabilities with knowing falsity and with the intention that [the Plaintiff] rely [thereupon]." Id. at * 14 (emphasis added).  Here, Plaintiff's negligence claim focuses not on Sunary's representations but on its failure to obtain the governmental approvals and incentives.

legal duty, apart from the parties' agreement, that would have obligated Sunray to disclose that it was not authorized by the City of Philadelphia or the Commonwealth of Pennsylvania to conduct business. Tellingly, Plaintiff cites to no such legal duty in its opposition papers.[6] Thus, the Court will not grant Plaintiff an opportunity to amend its negligence claim.

    C.    *Quasi-Contractual Remedies*

Defendant seeks to dismiss Plaintiff's claim for unjust enrichment/quantum meruit, arguing that claims for quasi-contractual relief are unavailable when there is a written agreement between the parties.[7] Plaintiff argues, in response, that it has the right under Federal Rule of Civil Procedure 8 to plead alternative causes of action, even if they are inconsistent, and that New Jersey law precludes quasi-contractual recovery only after it has been determined that a valid contract exists. In this case, Plaintiff's argument continues, its request for rescission means that the Court may ultimately determine that there is no valid contract.

Indeed, there is New Jersey case law stating that "there must be a rescission of an express contract before the parties will be permitted to proceed with a claim for Quantum meruit. The only conflict between pleading and proving an express contract and Quantum meruit simultaneously occurs in the absence of a rescission." Power-Matics, Inc. v. Ligotti, 79 N.J.Super. 294, 305 (App. Div. 1963) (citing Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-281 (1951) and C. B. Snyder Realty Co. v. Nat., Inc., Banking Co., 14 N.J. 146, 162-163 (1952)). Relying on this strain of cases, the

---

    [6]    For reasons not apparent to the Court, Plaintiff cites to a Pennsylvania state case that imposes a duty on hospitals to "avoid the risk of causing economic damages" to particular plaintiffs. Pl. Opp. at 13. As noted, New Jersey—not Pennsylvania—law applies to this suit.

    [7]    Defendant is correct that "quantum meruit" aspect of the title of Plaintiff's claim is misleading. The Court reads Plaintiff's claim as sounding solely in unjust enrichment in that Plaintiff seeks to recover the amounts it has paid to Defendant.

9

Third Circuit stated in Suburban Transfer Service, Inc. v. Beech Holdings, Inc., 716 F.2d 220 (3d Cir. 1983), that, with respect to quasi-contract claims, "there is no ground for implying a promise as long as a valid *unrescinded* contract governs the rights of the parties." Id. at 227 (emphasis added). Federal and state courts in New Jersey continue to cite Suburban Transfer for this principle, and I find it applicable here. See e.g., Kahanovitz v. Electro-Biology, Inc., 2011 WL 242031 at *10 (App. Div. Jan. 27, 2011); Premier Pork L.L.C. v. Westin, Inc., Civil No. 82-5219, 2008 WL 724352 at *14 (D.N.J.) (D.N.J. Mar. 17, 2008) ("The authority of an express contract will take precedent over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since the parties are bound by their agreement, and there is no ground for implying a promise so long as a valid *unrescinded* contract governs the rights of the parties.") (emphasis added) (alterations omitted). Accordingly, Defendant's motion to dismiss Plaintiff's quasi-contract claim is denied at this juncture, where a decision as to the enforceability of the parties' agreement has not yet been made.

III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's negligence claim (Count V) but DENIED as to the Counts III and VI.


Dated: April 12, 2011                                    /s/ Freda L. Wolfson
                                                         Freda L. Wolfson, U.S.D.J.